UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VERNET INC.,<br>Defendant. | CIVIL NO. 19-1494<br><br><br><br>COLLECTION OF MONEY |

## COMPLAINT FOR CONSENT JUDGMENT

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through the undersigned attorneys, and very respectfully alleges and prays:

### INTRODUCTION

1.     The United States files this action under the False Claims Act, 31 U.S.C. §§ 3729 et seq., to recover civil monetary penalties from the defendant's false claims to the Puerto Rico Department of Education ("PR DOE") made in violation of federal law and applicable statutory provisions.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and its general equitable jurisdiction; as well as subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, since the civil action arises under the laws of the United States, in particular, 31 U.S.C. §§ 3729, 3730.

3.     This Court has personal jurisdiction over Defendant, a corporation formed under

1

Puerto Rico law and that transacts business within the District of Puerto Rico.

4.      Venue is proper in this District under 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a).

Defendant's corporate offices are located within the District of Puerto Rico.

## PARTIES

5.      The plaintiff is the United States of America, on behalf of its United States Department of Education, hereinafter referred to as "US DOE".

6.      Defendant **Vernet - Virtual Education Resources Network Inc**, hereinafter referred to as "Vernet", was at all times relevant, an educational services provider duly incorporated and authorized to transact business in the Commonwealth of Puerto Rico.   Vernet also provided Supplemental Educational Services ("SES") for after-school tutoring and other remedial academic services as part of the educational services the company provided.

## TITLE I, PART A OF THE ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965 ("ESEA") PROGRAM

7.      Except as otherwise specifically noted, the allegations set forth below describe the ESEA Program and other facts during the period relevant to this action, that is, the 2012-2013 school year.

8.      The PR DOE was organized under Article V, section 6 of the Constitution of the Commonwealth of Puerto Rico.  The PR DOE is responsible for the planning and administration of all public elementary, secondary and some post-secondary education throughout Puerto Rico.

9.      The PR DOE administers various federal financial assistance programs funded by the US DOE intended for students in public and private schools.  The PR DOE receives funds under Title I, Part A (commonly known as "Title I funds") of ESEA, as reauthorized by the No Child Left

2

Behind Act of 2001 ("NCLB"), to provide financial assistance to local education agencies and schools with high percentages of children from low-income families to help ensure that all children meet challenging state academic standards.

10.     The PR DOE was permitted to use Title I funds allocated to them to pay for, among other things, educational projects to carry out its mission following federal and state policies and regulations.

11.     The Office of Inspector General of the Department of Education ("OIG") is responsible for identifying fraud, waste, abuse, and criminal activity involving the Department of Education funds, programs and operations. The OIG conduct independent audits and other reviews and criminal and civil investigations.

## STATEMENT OF FACTS

12.     On or about October 26, 2012, PR DOE and Vernet entered into a contract (2013-AF0174) for Vernet to provide educational services under Title I, Part A of ESEA. The funds to be used by PR DOE to pay Vernet were funds that the US DOE distributed to the PR DOE under Title I. The PR DOE was permitted to use Title I funds allocated to them to pay for SES for after-school tutoring and other remedial academic services. Part of the contract required Vernet to provide these SES services in the 2012-2013 school year. The United States of America contends that an investigation conducted by the US DOE and the Puerto Rico Comptroller's Office revealed that several of the payment invoices that were paid under the contract were for services that were not rendered.

13.     The United States contends that it has certain civil claims against Vernet arising from the undue submission of payment invoices to the PR DOE in San Juan, Puerto Rico, for

3

services that Vernet did not render.  The payment invoices that Vernet submitted to the PR DOE included payments for after-school tutoring and other remedial academic services to students who did not receive them as the students did not attend the educational sessions.  The United States contends that Vernet's payment invoices or claims constitute illegal claims against the United States under the False Claims Act, 31 U.S.C. § 3729, et seq.  This conduct is referred to below as the "Covered Conduct."

## CLAIM FOR RELIEF

### False Claims Act− 31 U.S.C. § 3729 (a) (1)

14.    This is a claim for damages and civil monetary penalties under the False Claims Act, 31 U.S.C. § 3729 (a) (1).

15.    Paragraphs 1 through 13 of this Complaint are hereby re-alleged and incorporated as though fully set forth herein.

16.    As part of the scheme to defraud and described as the covered conduct, Vernet submitted and caused to be submitted forty-five (45) claims for payment to the PR DOE for the alleged delivery of SES services, when such services were never rendered.

17.    Under the FCA, a "claim" includes requests for money presented to agents of the United States or to a contractor, grantee or other recipient, if the money is to be used on the government's behalf or to advance a government interest, as long as the United States provided any portion of the money requested.

18.    Each of these false statements constitute a unique claim of provider of services fraud on a grantee or other recipient of moneys to be used on the government's behalf or to advance a government interest for which the United States provided the money requested.  As such, damages,

4

as well as civil monetary penalties, must be assigned as allowed by law in an amount ranging from $5,500.00 to $11,000.00 each.

19.    On May 15, 2019, the parties in this action reached a Settlement Agreement in which Vernet agreed to pay $250,000.00 in U.S. Currency, plus interest, as damages and civil monetary penalties, to be paid off subject to a payment schedule.

### PRAYER FOR RELIEF

WHEREFORE, the United Sates respectfully requests that judgment be entered in its favor and against the defendant as follows:

A.    Enter a consent judgment to enforce the agreement reached by the parties in this action.

B.    Grant the United States interests from the date of judgment and such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 23rd day of May 2019.

ROSA EMILIA RODRIGUEZ –VELEZ
United States Attorney

*/s Jorge L. Matos*
Jorge L. Matos
Assistant U.S. Attorney
Civil Division
USDC No. G01307
Torre Chardon, Room 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
Tel. (787) 282-1814
Fax. (787) 766-6219
E-mail: Jorge.L.Matos2@usdoj.gov

**Attachment 1: Civil Cover Sheet**

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

VERNET, INC.

**(b)** County of Residence of First Listed Plaintiff

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jorge L. Matos, Assistant U.S. Attorney
U.S. Attorney's Office, 350 Chardon Ave., Suite 1201
Hato Rey, PR 00918 Tel: (787) 766-5656

Attorneys *(If Known)*
Maria Dominguez, Esq.
McConnell Valdes LLC, 270 Munoz Rivera Ave
Hato Rey, PR 00918 Tel: (787) 759-9292

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1345

Brief description of cause:
Collection of Money

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
250,000.00

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
05/23/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Attachment 2: Category Sheet**

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):   Matos, Jorge L.

USDC-PR Bar Number:   G01307

Email Address:   Jorge.L.Matos2@usdoj.gov

1.   Title (caption) of the Case (provide only the names of the first party on each side):

Plaintiff:   United States of America

Defendant:   Vernet, Inc.

2.   Indicate the category to which this case belongs:

☒ Ordinary Civil Case
☐ Social Security
☐ Banking
☐ Injunction

3.   Indicate the title and number of related cases (if any).

4.   Has a prior action between the same parties and based on the same claim ever been filed before this Court?

☐ Yes
☒ No

5.   Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

☐ Yes
☒ No

6.   Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

☐ Yes
☒ No

Date Submitted:   5/23/19

rev. Dec. 2009

[ Print Form ]   [ Reset Form ]

**EXHIBIT A: SETTLEMENT AGREEMENT**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between the United States of America, acting through the United States Attorney's Office, District of Puerto Rico and on behalf of the **United States Department of Education** (collectively the "United States") and **Vernet - Virtual Educational Resources Network Inc.,** ("Vernet"), through their authorized representatives.

## GENERAL PROVISIONS

A.      The United States Department of Education ("US DOE") is an agency of the United States of America.

B.      Vernet - Virtual Educational Resources Network Inc. is a company specialized in the research and development of interactive educational programs for elementary, middle and high schools, and authorized to do business in Puerto Rico.

C.      On or about October 26, 2012, the Puerto Rico Department of Education ("PR DOE") and Vernet entered into a contract (2013-AF0174) for Vernet to provide educational services under Title I, Part A of the Elementary and Secondary Education Act of 1965 ("ESEA"), as reauthorized by the No Child Left Behind Act of 2001 ("NCLB"). The funds to be used by PR DOE to pay Vernet were funds that the US DOE distributed to the PR DOE under Title I. The PR DOE was permitted to use Title I funds allocated to them to pay for Supplemental Educational Services ("SES") for after-school tutoring and other remedial academic services. Part of the contract required Vernet to provide these SES services in the 2012-2013 school year. The United States of America sustains that pursuant to investigation conducted by the US DOE and the Puerto Rico Comptroller's Office revealed that several of the

1

payment invoices that were paid under the contract were for services that were not rendered. Vernet denies the aforementioned allegations.

D.     The United States contends that it has certain civil claims against Vernet arising from the undue submission of payment invoices to the PR DOE in San Juan, Puerto Rico, for services that Vernet did not render. The payment invoices that Vernet submitted to the PR DOE included payments for after-school tutoring and other remedial academic services to students who did not receive them as the students did not attend the educational sessions. The United States contends that Vernet's payment invoices or claims constitute illegal claims against the United States under the False Claims Act, 31 U.S.C. § 3729, et seq. This conduct is referred to below as the "Covered Conduct." The United States' contention as to the illegality of the claim is contested by Vernet and does not constitute an admission of the same.

E.     This Agreement is neither an admission of liability by Vernet nor a concession by the United States that its claims are not well founded.

F.     In relation to the above-mentioned Covered Conduct, the United States has engaged in substantial settlement conversations with Vernet after which the parties have reached the instant Agreement. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligation of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.     Vernet shall pay to the United States of America the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) in damages and civil penalties, in addition to interest on the Settlement Amount at the prevailing rate under the Federal Debt Collection

2

Procedures Act ("FDCPA"), from the date of judgment, to be paid under the terms specified below. The parties further agree pursuant to Section 523 of the U.S. Bankruptcy Code, that for purposes of the United States Bankruptcy Code, 11 U.S.C. §§101 et seq., or any successor statute, the amounts due hereunder are not dischargeable. The aforementioned sum will be paid in the following payment schedule:

A.     On or before August 15, 2019, **Vernet** will make a first payment to the **UNITED STATES** in the amount of **FIFTEEN THOUSAND DOLLARS, ($15,000.00)**.

B.     Over a period of 60 months, beginning on or before September 15, 2019, Vernet will pay the remaining **TWO HUNDRED THIRTY FIVE THOUSAND DOLLARS ($235,000.00)**, plus interest to accrue from the date of judgment at the determined U.S. Treasury post-judgment interest rate computed daily and compounded annually, in monthly intervals in accordance to the payment schedule listed below:

| YEAR | DATE OF PAYMENTS | AMOUNT OF INDIVIDUAL PAYMENTS | TOTAL AMOUNT PAID | BALANCE OWED |
|---|---|---|---|---|
| 1 | Down Payment August 15, 2019 | $15,000.00 | $15,000.00 | $235,000.00 |
| 1 | Payments September 15, 2019 through May 15, 2020 | $3,000.00 per month for 9 months + interest | $27,000.00 | $208,000.00 |
| 2 | Payments June 15, 2020 through May 15, 2021 | $4,000.00 per month for 12 months + interest | $48,000.00 | $160,000.00 |
| 3 | Payments June 15, 2021 through May 15, 2022 | $4,000.00 per month for 12 months + interest | $48,000.00 | $112,000.00 |
| 4 | Payments June 15, 2022 through May 1, 2023 | $4,000.00 per month for 12 months + interest | $48,000.00 | $64,000.00 |
| 5 | Payments June 15, 2023 through April 15, 2024 | $5,333.33 per month for 11 months + interest | $58,666.63 | $5,333.37 |
| 5 | Payment May 15, 2024 | $5,333.37 + interest | $5,333.37 | -0- |

3

C.     The parties further agree that if Vernet, during the duration of the aforementioned payment plan, develop the ability to pay in full the outstanding monies owed to the United States, they may do so in a lump sum.

D.     Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Vernet's full payment of the Settlement Amount, and subject to Paragraph 13, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Vernet, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, as well as the corporation's officers, agents, servants, and employees from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake and unjust enrichment.

E.     Subject to the exceptions in Paragraph 3 below, and conditioned upon Vernet's full payment of the Settlement Amount, and subject to Paragraph 13, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States, and for its, successors, attorneys, agents, members, and assigns, releases Vernet from any civil monetary claim the United States has brought for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

2.     Subject to the exceptions in Paragraph 3 (concerning excluded claims) below, and conditioned upon Vernet's full payment of the Settlement Amount, the United States releases Vernet, together with its current and former parent corporations (if applicable); direct and

4

indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and

officers, directors, and affiliates, attorneys and consultants; and the successors and assigns of any

of them from any civil or administrative monetary claim the United States has for the Covered

Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties

Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812;

the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; and any theory of common law fraud,

payment by mistake, unjust enrichment, breach of contract, or similar theories in common law

solely in relation to the Covered Conduct discussed above.

      3.      Notwithstanding the release given in paragraph 2 of this Agreement, or any other

term of this Agreement, the following claims of the United States are specifically reserved and

not released:

           a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

           b.     Any criminal liability;

           c.     Except as explicitly stated in this Agreement, any administrative liability; including mandatory or permissive exclusion from federal programs;

           d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

           e.     Any liability based upon obligations created by this Agreement;

           f.     Any liability of individuals not covered under Paragraph 2 of these terms and conditions.

      4.      Vernet waives and shall not assert any defenses Vernet may have to any criminal

prosecution or administrative action relating to the Covered Conduct that may be based in whole

or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the

Constitution, or under the Excessive Fines Clause of the Eight Amendment of the Constitution,

this Agreement bars a remedy sought in such criminal prosecution or administrative action.

5.    Nothing in this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Laws, Title 26 of the United States Code.

6.    Vernet has made financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements as basis in fact in reaching this Agreement. Vernet warrants that the Financial Statements are complete, accurate, and current. If the United States learns of any material misrepresentations made pursuant to "bad faith motives", and not by mere inadvertence, by Vernet in the financial disclosures made to the United States, the United States may at its option: (a) rescind this Agreement and file suit [OR reinstate its suit] based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount. Vernet agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

7.    In the event that the United States, pursuant to Paragraph 6 (concerning material misrepresentation in the disclosure of assets), above, opts to rescind this Agreement, Vernet agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States pursuant to the Covered Conduct.

8.    Vernet warrants that they have reviewed their financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(I)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the signatory Parties warrant that, in evaluating whether to execute this Agreement, they (a) have

6

intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Vernet, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the signatory Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Vernet was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

9.      If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Vernet commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Vernet's debts, or seeking to adjudicate Vernet as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Vernet or for all or any substantial part of Vernet's assets, Vernet agrees as follows:

a.      Vernet's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Vernet shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Vernet's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Vernet was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Vernet.

b.      If Vernet's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the

7

Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Vernet for the claims that would otherwise be covered by the releases provided by this Agreement. Vernet agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Vernet shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Vernet shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within ninety (90) calendar days of written notification to Vernet that the releases have been rescinded pursuant to this Paragraph,; and (iii) the United States has a valid claim against Vernet in the amount of **NINETY EIGHT THOUSAND FOUR HUNDRED THIRTY-NINE DOLLARS AND SIXTY CENTS ($98, 439.60),** in addition to civil monetary penalties between $5,500 and $11,000 per false claim, and project replacement costs, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding, less any payment received by the United States in conformity with this agreement.

         c.     Vernet acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

       10.    In the event of a voluntary or involuntary liquidation or reorganization case by or against the defendant under bankruptcy, receivership or other insolvency law, Vernet agrees not to contest or oppose any motion filed by the United States seeking relief from or modification of the automatic stay imposed by 11 U.S.C. § 362(a) nor to seek relief under 11 U.S.C. § 105 to

enjoin or restrain the United States from recovering monies owed by Vernet arising out of this agreement or its underlying relationship with the United States related to the covered conduct through offset. Vernet recognizes that this express waiver is in consideration for the final settlement of the claims set forth in the qui tam Complaint under 31 U.S.C. 3729, et seq.

11.    Upon the signing and filing of this agreement in court and receipt of the first payment under this agreement, the United States and Vernet shall promptly sign and file in the Civil Action a motion to dismiss the Complaint with prejudice, recognizing that the United States District Court for the District of Puerto Rico shall retain jurisdiction for enforcement purposes.

12.    Vernet fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Vernet has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.    a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Vernet, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s), civil, or criminal investigation(s) of the matters covered by this Agreement;

9

(3)     Vernet's investigation, defense, and corrective actions undertaken in response to the United States' audit(s), civil, or criminal investigations(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment Vernet makes to the United States pursuant to this Agreement, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Vernet, and Vernet shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.     This Agreement does not bar the United States from assessing and contesting any prior unallowable costs that may have been submitted for payment by Vernet.

d.     This Agreement will not prohibit or otherwise limit Vernet's ability to charge any current or future monetary impact that may be deemed as an allowable cost incurred in this proceeding.

14.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District

10

Court for the District of Puerto Rico. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.     This Agreement constitutes the complete agreement between the Parties as to the covered conduct. This Agreement may not be amended except by written consent of the Parties.

18.     In the event any provision of this Agreement shall be determined to be illegal, invalid, or unenforceable as a matter of law or otherwise, as determined by a court with competent jurisdiction and venue, the remaining portions of the Agreement shall not be invalidated and shall be deemed to remain in full force and effect.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the United States and Vernet respectively.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on Vernet's successors, transferees, heirs, and assigns.

22.     All parties agree and recognize that although this Agreement has been signed and entered into outside court publicity, the United States of America and Vernet are not bound by any confidentiality of the same pursuant to U.S. Department of Justice policy and Freedom of Information Act.

23.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

11

24.    Pursuant to this agreement, Vernet is aware that the United States will file a

Complaint for Consent Judgment in the United States District Court for purposes of enforcement

of this agreement.  Accordingly, Vernet consents to having the court enter judgment approving

this stipulation, and retaining jurisdiction for enforcement purposes.

Executed in San Juan, Puerto Rico, this 15ᵗʰ day of May, 2019.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney



Hector E. Ramirez-Carbo
Assistant U.S. Attorney
Chief, Civil Division



Jorge L. Matos
Assistant U.S. Attorney
Civil Division
Attorney for the United States and
United States Department of Education



María A. Domínguez
Attorney for Vernet
Dated:  5/17/19



Manuel Figueroa
Director, Vernet
Dated: 5-15-19

12